UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION


IN RE: CAMP LEJEUNE, NORTH CAROLINA,
WATER CONTAMINATION LITIGATION (NO. II)                           MDL No. 2911


**ORDER DENYING TRANSFER**


**Before the Panel**: Defendant the United States moves under 28 U.S.C. § 1407 to centralize pretrial proceedings in this litigation in the Northern District of Georgia. This litigation consists of six actions pending in three districts, as listed on Schedule A.[1] The Panel also has been notified of five potentially-related actions filed in three districts. Plaintiff in the Eastern District of North Carolina *Washington* action opposes centralization or, alternatively, suggests centralization in the Eastern District of North Carolina or exclusion of his action from centralized proceedings. Of the three *pro se* plaintiffs who responded to the motion, two appear to oppose centralization, although the position of one is not entirely clear. The third supports centralization in the Northern District of Georgia or the Eastern District of North Carolina but states she is "in favor of what is best for all parties involved be it centralization or decentralizing."

Like the actions centralized in MDL No. 2218 – *In re Camp Lejeune, North Carolina Water Contamination Litigation*, these actions share factual questions arising out of alleged deaths or injuries due to contaminated drinking water on the Marine Corps Base at Camp Lejeune, North Carolina. That litigation was closed in December 2016 following the grant of defendant's motion to dismiss. *See In re Camp Lejeune North Carolina Water Contamination Litig.*, 263 F. Supp. 3d 1318, 1332 (N.D. Ga. 2016), *aff'd*, 774 Fed. Appx. 564 (11th Cir. 2019), *reh'g denied*, No. 16-17573-GG (11th Cir. Sept. 5, 2019).

Opponents of centralization variously argue that centralization would cause them inconvenience. Additionally, the *Washington* plaintiff argues that defendant seeks centralization in the Northern District of Georgia so that Eleventh Circuit rulings made as to MDL No. 2218 and favorable to defendant will be applied to these newly-filed cases. Fourth Circuit law, he argues, is more favorable to plaintiffs' claims. He also argues that his action is unique from the remaining actions on the motion.

After considering all arguments, we conclude that centralization is not necessary for the convenience of the parties and witnesses or to further the just and efficient conduct of this litigation. We are presented with just eleven cases at this time. More than half of these cases already are pending in the same district, and most are brought by *pro se* plaintiffs. We are not persuaded that

---

[1]   A seventh action on the motion has been dismissed without prejudice.

-2-

the potential benefits of centralization outweigh the inconvenience transfer would pose to these individuals or the judicial burden of managing centralized litigation involving numerous unrepresented parties. We consider voluntary coordination among the parties and the involved courts of these relatively few actions to be a preferable alternative to centralization. *See, e.g., In re Eli Lilly and Co. (Cephalexin Monohydrate) Patent Litig.*, 446 F. Supp. 242, 244 (J.P.M.L.1978); *see also* Manual for Complex Litigation, Fourth, § 20.14 (2004).

Defendant represents that approximately 900 Federal Tort Claims Act (FTCA) claimants have requested that the United States Navy reconsider the denial of their claims, and that some of these claimants may file cases in federal courts. Additional related cases, therefore, may materialize. But the possible universe of claims soon will be limited by the FTCA's statute of limitations, and it is not certain that these claimants will file suit if reconsideration is denied. We have held that the mere possibility of additional actions does not justify centralization. *See In re Intuitive Surgical, Inc., Da Vinci Robotic Surgical Sys. Prods. Liab. Litig.*, 883 F. Supp. 2d 1339, 1340 (J.P.M.L. 2012) (denying centralization, nothing that "[w]hile proponents maintain that this litigation may encompass 'hundreds' of cases or 'over a thousand' cases, we are presented with, at most, five actions.").

Further weighing against centralization, counsel for the *Washington* plaintiff represented at oral argument that plaintiffs in the Northern District of Georgia and District of New Hampshire cases have agreed they will move to transfer their actions to the Eastern District of North Carolina under 28 U.S.C. § 1404(a). If these motions are successful, just one action would remain outside the state of North Carolina.

IT IS THEREFORE ORDERED that the motion for centralization of these actions is denied.

PANEL ON MULTIDISTRICT LITIGATION

_____
Sarah S. Vance
Chair

| | |
|---|---|
| Lewis A. Kaplan | Ellen Segal Huvelle |
| R. David Proctor | Catherine D. Perry |
| Karen K. Caldwell | Nathaniel M. Gorton |

**IN RE: CAMP LEJEUNE, NORTH CAROLINA,
WATER CONTAMINATION LITIGATION (NO. II)**               MDL No. 2911

## SCHEDULE A

<u>Northern District of Georgia</u>

CARTER, ET AL. v. UNITED STATES OF AMERICA, C.A. No. 1:19-02787

<u>District of New Hampshire</u>

PHILLIPS v. US GOVERNMENT, ET AL., C.A. No. 1:19-00128

<u>Eastern District of North Carolina</u>

COUNCIL v. U.S. NAVY, ET AL., C.A. No. 5:19-00097
BUNTING v. DEPARTMENT OF THE NAVY, ET AL., C.A. No. 7:19-00067
WASHINGTON v. DEPARTMENT OF THE NAVY, C.A. No. 7:19-00112
HURDLE v. CAMP LEJEUNE, USMC, ET AL., C.A. No. 7:19-00115